UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID F. NOIA,                          :
          Plaintiff,                    :
                                        :
     v.                                 :     CA 05-448 M
                                        :
MICHAEL J. ASTRUE,[1]                   :
COMMISSIONER,                           :
SOCIAL SECURITY ADMINISTRATION,         :
          Defendant.                    :

### MEMORANDUM AND ORDER

This matter is before the Court on a request for judicial
review of the decision of the Commissioner of Social Security
("the Commissioner"), denying Disability Insurance Benefits
("DIB"), under § 205(g) of the Social Security Act, as amended,
42 U.S.C. § 405(g) ("the Act").  Plaintiff David F. Noia
("Plaintiff") has filed a motion for summary judgment.  Defendant
Michael J. Astrue ("Defendant") has filed a motion for an order
affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a
magistrate judge for all further proceedings and the entry of
judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ.
P. 73.  For the reasons set forth herein, I find that the
Commissioner's decision that Plaintiff is not disabled is

_____

[1] On February 12, 2007, Michael J. Astrue became the Commissioner
of Social Security.  Pursuant to Fed. R. Civ. P. 25(d)(1), Acting
Commissioner Astrue is hereby substituted for Jo Anne B. Barnhart as
Defendant in this action.  See Fed. R. Civ. P. 25(d)(1) ("When a
public officer is a party to an action in his official capacity and
during its pendency dies, resigns, or otherwise ceases to hold office,
the action does not abate and the officer's successor is automatically
substituted as a party.  Proceedings following the substitution shall
be in the name of the substituted party ...."); see also 42 U.S.C. §
405(g) ("Any action instituted in accordance with this subsection
shall survive notwithstanding any change in the person occupying the
office of Commissioner of Social Security or any vacancy in such
office.").

supported by substantial evidence in the record.  Accordingly, based on the following analysis, I order that Plaintiff's Motion for Summary Judgment (Document ("Doc.") #9) ("Motion for Summary Judgment") be denied and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #10) ("Motion to Affirm") be granted.

### Facts and Travel

Plaintiff was born on March 30, 1963, and was forty-two years of age at the time of the hearing before the administrative law judge ("ALJ").  (Record ("R.") at 16, 196)  He completed the tenth grade, (R. at 16, 79, 90), and has past relevant work experience as an iron worker, (R. at 16, 74, 96).

Plaintiff filed an application for DIB on August 28, 2003 (protective filing date), alleging disability since June 23, 2003, due to epilepsy and seizures.  (R. at 15-16, 58, 73, 86)  The application was denied initially and on reconsideration, (R. at 27, 28), and a request for a hearing before an administrative law judge ("ALJ") was timely filed, (R. at 36).  A hearing was conducted on April 20, 2005, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 192, 196-230, 232-35)  An impartial vocational expert ("VE"), Albert Sabella, also testified.  (R. at 231, 235-41)

The ALJ issued a decision on July 19, 2005, in which he found that Plaintiff was not disabled and, therefore, not entitled to a period of DIB.  (R. at 15-26)  The Appeals Council denied Plaintiff's request for review on August 22, 2005, (R. at 7-9), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 7).

Plaintiff filed a Complaint (Doc. #1) in this Court on October 24, 2005.  An Order (Doc. #4) referring the case to this Magistrate Judge was entered on January 9, 2006.  Defendant on February 27, 2006, filed her Answer (Doc. #7) to the Complaint.

On April 25, 2006, Plaintiff's Motion for Summary Judgment (Doc. #9) was filed.  Defendant's Motion to Affirm (Doc. #10) was filed on May 17, 2006.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is legally correct.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed de novo, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support h[is] conclusion.").  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992); Social Security Ruling ("SSR") 96-29, at *3 (S.S.A.) (quoting Richardson v. Perales and stating that "[t]he term [substantial evidence] is intended to have this same meaning in 20 CFR 404.1527(d)(2) ....").

(citing <u>Rodriquez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)(citing <u>Richardson v. Perales</u>, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

<strong>Law</strong>

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than sixty-five years of age, file an application for benefits, and be under a disability as defined by the Act.  <u>See</u> 42 U.S.C. § 423(a).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.  <u>See</u> 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4]  20 C.F.R. § 404.1521(a) (2007).  A

---

[3] The ALJ found that Plaintiff met the non-disability requirements as of his alleged onset date and was insured for disability benefits through the date of the ALJ's decision.  (Record ("R.") at 16, 25).

[4] Section 404.1521 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2007).  Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. <u>See Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520(a) (2007); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. <u>See</u> 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. <u>See</u> <u>Seavey</u>, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." <u>Freeman v. Barnhart</u>, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, (R. at 16, 25); that Plaintiff's epilepsy was a severe impairment but that his depression was not considered

---

<u>Id.</u>

severe, (R. at 17, 25); that Plaintiff's epilepsy did not meet or equal any listed impairment, (R. at 25); that Plaintiff was unable to perform his past relevant work as an ironworker because it required constant exposure to hazards and frequent climbing and balancing, (R. at 23, 25); that Plaintiff's allegations regarding his limitations were not totally credible, (R. at 22, 25); that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels but that he should not have concentrated exposure to hazards, such as unprotected heights or dangerous machinery, nor should he be required to balance or climb ropes, scaffolds, or ladders, (R. at 17, 25); that Plaintiff could be expected to make a vocational adjustment to work that exists in the national economy including employment as an electronics worker, production assembler, cleaner, assembler, and preparer, (R. at 24-26); and, therefore, that Plaintiff was not under a disability, as defined by the Act, at any time through the date of the decision, (R. at 25-26).

### Errors Claimed

Plaintiff alleges: 1) that his epileptic condition meets the requirements of Listing 11.03 and that the ALJ erred in failing to so find, see Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Plaintiff's Mem.") at 12; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03 (2007); and 2) that the ALJ's assessment of Plaintiff's credibility failed to comply with applicable regulations and rulings, see Plaintiff's Mem. at 14.

### Discussion

**I.  Substantial evidence supports the ALJ's finding that Plaintiff's epilepsy does not meet or equal Listing 11.03.**

The ALJ found at step two that Plaintiff's epilepsy was a severe impairment.  (R. at 17, 25)  However, at step three the ALJ determined that Plaintiff's epilepsy did not "meet or equal any of the impairments detailed in the Listing of Impairments."

(R. at 17)(internal citation omitted).  In reaching this conclusion, the ALJ stated that she had "evaluated [Plaintiff's] medical impairments within the provisions of Listing section [11.03],[5] *Epilepsy*."  (<u>Id.</u>)  Thereafter, the ALJ reviewed in detail Plaintiff's treatment records with Edward M. Donnelly, M.D., from July 2003 to January 2005.  (R. at 17-18)

Plaintiff contends that the evidence supports a finding that Plaintiff's condition meets the criteria of Listing 11.03.  <u>See</u> Plaintiff's Mem. at 12.  Alternatively, Plaintiff argues that Plaintiff's "case should be remanded for further proceedings with testimony from a medical expert to evaluate [Plaintiff's] condition pursuant to Listing 11.03."  <u>Id.</u> at 14.

As an initial matter, it does not appear that Plaintiff's counsel informed the ALJ of his contention that he satisfied the requirements of Listing 11.03.  Accordingly, the Court finds that Plaintiff waived this issue.  <u>See</u> <u>Shalala v. Illinois Council on Long Term Care, Inc.</u>, 529 U.S. 1, 15, 120 S.Ct. 1084, 1094 (1999)(stating that "§ 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court."); <u>Mills v. Apfel</u>, 244 F.3d 1, 8 (1st Cir. 2001)(affirming district court's finding that plaintiff waived claim by making no mention of it to ALJ); <u>see also</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 112, 120 S.Ct. 2080, 2086 (2000)(O'Connor, J., concurring in part)("In most cases, an issue not presented to an administrative decision maker cannot be argued for the first time in federal court.").

Even if the Court were to overlook Plaintiff's failure to raise this issue before the ALJ, Plaintiff's contention still

---

[5] The ALJ cites to "Listing section 10.06, *Epilepsy*."  (R. at 17)  However, it is clear to the Court that her intended citation was to "Listing section 11.03 Epilepsy."  The heading for Listing 10.06 appears just four lines above Listing 11.00 in Appendix 1.

fails.  As previously stated, at step three a plaintiff has the
burden to show that he has an impairment or combination of
impairments that meets or equals the severity of a listed
impairment.  <u>Dudley v. Sec'y of Health & Human Servs.</u>, 816 F.2d
792, 793 (1st Cir. 1987).  "For a claimant to show that his
impairment matches a listing, it must meet *all* of the specified
medical criteria.  An impairment that manifests only some of
those criteria, no matter how severely, does not qualify."
<u>Zebley v. Sullivan</u>, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990).

Listing 11.03 states:

> 11.03  *Epilepsy—nonconvulsive epilepsy (petit mal,
> psychomotor, or focal),* **documented by detailed
> description of a typical seizure pattern,** *including all
> associated phenomena; occurring more frequently than once
> weekly in spite of at least 3 months of prescribed
> treatment.*  With alteration of awareness or loss of
> consciousness and transient postictal[6] manifestations of
> unconventional behavior or significant interference with
> activity during the day.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.03 (bold added).

Listing 11.03 falls under the neurological impairments of
Section 11.00, Pt. 404, Subpt. P, App. 1.  Subsection A of
Section 11.00 provides in relevant part:

> A.  *Epilepsy*.  In epilepsy, regardless of etiology,
> degree of impairment will be determined according to
> type, frequency, duration, and sequelae of seizures.  **At
> least one detailed description of a typical seizure is
> required**.  Such description includes the presence or
> absence of aura, tongue bites, sphincter control,
> injuries associated with the attack, and postictal
> phenomena.  The reporting physician should indicate the
> extent to which description of seizures reflects his own
> observations and the source of ancillary information.
> **Testimony of persons other than the claimant is essential
> for description of the type and frequency of seizures if**

---

[6] Postictal means "occurring after a seizure or sudden attack."
<u>Dorland's *Illustrated* Medical Dictionary</u> 1340 (28th Ed. 1994).

**professional observation is not available**.

Section 11.00, Pt. 404, Subpt. P, App. 1 § 11.00 (bold added).

After considering the above requirements, the Court concludes for three reasons that Plaintiff failed to prove that he met the listing requirements of Section 11.03.  First, Plaintiff did not produce at least one detailed description of a typical seizure from a physician.  The only descriptions of Plaintiff's seizures are his own accounts of having staring spells for brief periods in which he "blanks out" and then cannot remember the incident.  (R. at 145, 170, 177, 179, 181)  There is no report in the record indicating that Dr. Donnelly or any other physician observed these staring spells.  While Plaintiff was admitted to Rhode Island Hospital in August of 2003 for monitoring of the spells, he "had no recorded events ...."  (R. at 124)  Plaintiff also did not produce any evidence from a third person regarding them.  Thus, Plaintiff failed to satisfy the first evidentiary requirement of Listing 11.03 that the seizures be documented by a detailed description of their typical pattern. The record only reflects Plaintiff's account of his seizures.

Second, Plaintiff failed to meet the requirement that his seizures occur more frequently than once weekly.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03.  Again, the only evidence on this point is from Plaintiff's own self-reports, despite the "essential" need to produce independent documentation as to the frequency of the seizures from a physician or other person.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00A.  Even accepting Plaintiff's self-report of two or more seizures a week between July of 2003 and January of 2004 despite being on medication, (R. at 123, 145, 170, 177), by April of 2004 the frequency of such spells had decreased to approximately once per week, (R. at 179). While Dr. Donnelly wrote on August 16, 2004, that Plaintiff has "persistent brief staring spell type seizures which are occurring

9

at two seizures per week," (R. at 181), the doctor recorded that
"[t]hey are much better than they were before," (id.).  At
Plaintiff's next appointment on January 10, 2005, Dr. Donnelly
noted that since "the last visit on 8/16/04, he has had no
seizures." (R. at 183)  Thus, for a period of almost five months
Plaintiff was seizure free.  It is clear from the record that
Plaintiff's seizures occur on a variable basis.  Thus, Plaintiff
did not satisfy the second element of Listing 11.03.  See 20
C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03.

        Furthermore, under 42 U.S.C. § 423(d)(1)(A) an impairment
must be expected to result in death or to last for a continuous
period of twelve months.  The impairment must not merely be
present for twelve months, but additionally must be present at a
level of severity which prevents the performance of substantial
gainful work.  Barnhart v. Walton, 535 U.S. 212, 218-19, 122
S.Ct. 1265, 1270 (2002)(finding it fairly inferred from statute
that the impairment must be severe enough to prevent substantial
gainful work for twelve months).  Social Security Ruling ("SSR")
87-6 makes clear that due to advances in medication "most
epileptic seizures are controllable and individuals who receive
appropriate treatment are able to work."  SSR 87-6, 1987 WL
109184, at *1.  Here, even if Plaintiff's self-reports as to the
frequency of his staring spells were viewed as satisfying the
frequency requirement of Listing 11.03, the record indicates that
they did not continue to occur at listing-level frequency for
twelve months or more, as necessary to met the durational limits
of the Act.  "An allowance on the basis of meeting listing level
severity is warranted only when the individual is following a
treatment regimen prescribed by his or her treating source and
continues to have seizures at the specified frequency."  SSR 87-6
at *3.

        Third, and perhaps most significant, Plaintiff has failed to

10

meet his burden of showing that as a result of the staring spells he experienced "transient postictal manifestations of unconventional behavior or significant interference with activity during the day." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03. Although Plaintiff reports fatigue, amnesia, confusion, and embarrassment following a staring episode, the record does not contain a report from a physician or other person documenting these effects despite the fact that it is "essential" that Plaintiff produce this evidence to meet the requirements of Listing 11.03.

Even accepting Plaintiff's statements at full value, they do not indicate that the staring spells cause a level of disruption in Plaintiff's ability to function of the degree required by the Listing. The discharge summary dated August 6, 2003, from Rhode Island Hospital notes that Plaintiff reported that he "just paces the last seconds [of a staring spell] and he fully returns to baseline immediately." (R. at 123) Plaintiff indicated on a Seizure Questionnaire that a staring spell lasted between five and thirty seconds and that afterwards he felt tired and confused, had no memory, and was embarrassed. (R. at 113) At the administrative hearing, Plaintiff testified that after a seizure he would be tired and would have to recollect what he had been doing before the staring spell. (R. at 227) Plaintiff also described his seizures as "a small blank out." (R. at 226) None of Plaintiff's statements indicate that the effect of his seizures meet the level of severity required by Listing 11.03. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03.

It also does not appear that Plaintiff's daily activities are significantly compromised by his seizures. Plaintiff related at the hearing that he was able to clean and groom himself, prepare his own full-course meals every day, shop for groceries and other necessities on a daily basis, do housework, maintain

11

his bank accounts, read books, watch television, play poker weekly, ride a bicycle for twenty minutes, take forty-five minute walks, go to the batting cage whenever he could get a friend to drive him, use his universal machine once a week to exercise his legs and upper chest, go to or rent movies occasionally, and visit his father about every two weeks.  (R. at 201-09, 213) Additionally, Plaintiff did not tell any of his doctors that his daily activities were affected by his seizures or that he needed assistance with his housework.

Additionally, two state agency medical consultants completed Physical Residual Functional Capacity Assessments ("RFC Assessments") and opined that Plaintiff's epilepsy did not rise to listing-level severity.  (R. at 133-40, 147-54)  "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).  "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  Id. at *3; see also Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)("[A]n advisory report such as those submitted by [two non-testifying, non-examining physicians] is entitled to evidentiary weight, which will vary with the circumstances, including the nature of the illness and the information provided the expert.  In a related context we have held that the testimony of a non-examining medical advisor--to be distinguished from the non-testimonial written reports in the instant case--can alone constitute substantial evidence, depending on the circumstances.")(citations and internal quotation marks omitted); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 129 (1st

Cir. 1981)("[I]t is clear that it is within the [Commissioner's] province to accord greater weight to the report of a medical expert commissioned by the [Commissioner]."); <u>Lewis v. Barnhart</u>, No. 04-62-B-W, 2004 WL 2677211, at *5 (D. Me. Nov. 24, 2004) ("[T]he administrative law judge committed no error in choosing to credit the RFC assessment of a non-examining consultant ... over that of an examining consultant ....").

Here, an unidentified state agency physician found on October 20, 2003, that Plaintiff could perform physical activities consistent with light work[7] and, thus, that Plaintiff's impairments did not meet or equal a listed impairment. (R. at 133-40) Joanne Jones, M.D., another state agency consultant, also found in an RFC Assessment completed on January 23, 2004, that Plaintiff's condition did not meet a listed impairment. (R. at 147-54) Specifically, Dr. Jones reported that Plaintiff "falls short of meeting [Listing] 11.03 as he returns to baseline immediately following the seizures." (R. at 149, 154) Dr. Jones further opined that Plaintiff could perform work activities consistent with light work. (R. at 148) Therefore, the ALJ's finding that Plaintiff's epilepsy was severe but did not meet or equal Listing 11.03 is supported by the opinions of the state agency consultants, and the ALJ had the authority to rely on such opinions. In sum, there is substantial evidence in the record to support the ALJ's finding that Plaintiff did not prove that his epilepsy meet Listing 11.03.

The Court also rejects Plaintiff's alternative argument that the case should be remanded for further proceedings so that a

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2007).

medical expert can testify whether Plaintiff's impairment meets Listing 11.03 because "[u]se of a medical advisor in appropriate cases is a matter left to the [Commissioner's] discretion; nothing in the Act or regulations requires it." <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 5 (1st Cir. 1987). Moreover, although an ALJ considers "opinions from medical sources on issues such as whether [a claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 ..., [a claimant's] residual functional capacity, or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2) (2007)(internal citation omitted). Here, the Court finds that the ALJ's decision that Plaintiff's epilepsy did not meet Listing 11.03 is one that is reserved for the Commissioner and also is based on substantial evidence in the record. Thus, the Court will not remand on this issue.

**II.  The ALJ's assessment of Plaintiff's credibility complied with applicable regulations and rulings.**

The ALJ determined that Plaintiff's "statements concerning his impairments and their impact on his ability to work are not entirely credible in light of his medical history and the reports of the treating and examining physicians.  Nor does the objective medical evidence support limitations to the degree alleged by [Plaintiff]." (R. at 22)(internal citation omitted).  Plaintiff argues that the ALJ's credibility "observations and conclusion ignore[] the plaintiff's testimony that antiepileptic medications have caused him significant side effects and that his testimony is supported throughout Dr. Donnelly's records," Plaintiff's Mem. at 14 (internal citations omitted), and that "the ALJ's method of assessing the plaintiff's credibility does not comply with regulations and rulings governing credibility assessment." <u>Id.</u>

14

The Court finds that the ALJ's credibility finding is based on substantial evidence.

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)(citing DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); Suarez v. Sec'y of Health & Human Servs., 740 F.3d 1 (1st Cir. 1984)(stating that ALJ is "empowered to make credibility determinations and to resolve conflicting evidence"). In addition, this Court is required to "pay particular attention to an ALJ's evaluation of complaints of pain in light of their subjective nature." Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 523 (1st Cir. 1989)(internal quotation marks omitted). Finally, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)(internal citation omitted).

Here the ALJ made specific findings as to the relevant evidence she considered in determining to disbelieve Plaintiff. See DaRosa v. Sec'y of Health & Human Servs., 803 F.2d at 26 (requiring such findings). She noted that no treating or examining physician indicated that Plaintiff experienced work-related restrictions that would prevent him from performing a significant range of work activity. (R. at 22-23) The ALJ further pointed out that although Dr. Donnelly had noted that it

15

was unsafe for Plaintiff to work as an iron worker, he did not
suggest that Plaintiff was totally disabled.  (R. at 23)
Additionally, the ALJ explained how the reports from the DDS
physicians contradicted Plaintiff's statement regarding his
impairments.

> In addition to the opinions of Drs. Donnelly and Curran,
> discussed above, the record contains opinions rendered by
> non-examining, state agency medical experts that were
> considered in establishing [Plaintiff's] residual
> functional capacity.  Both opinions indicated that
> [Plaintiff] can perform light work that does not require
> concentrated exposure to hazards (machinery, heights,
> etc.).  The second opinion, dated January 2004, also
> indicates that [Plaintiff] should not be required to do
> more than occasional climbing or balancing.  These
> opinions are generally consistent with the weight of the
> evidence with respect to non-exertional limitations, even
> in the face of the significant reduction in the frequency
> of [Plaintiff's] staring spells with treatment.  The
> possibility that [Plaintiff] may experience seizure
> activity, such as the staring spells, supports the need
> for limitations in his exposure to hazards, climbing and
> balancing activities.  However, limitations as to the
> exertional level of work of which [Plaintiff] is capable
> are not supported by the evidence of record. [Plaintiff]
> consistently exhibited normal gait, motor strength,
> sensation and reflexes, and no atrophy, tremor or
> abnormal neurological finding were noted. No treating or
> examining physician found any dysfunction relating to
> [Plaintiff's] cervical or lumbar spine, shoulders, elbows
> or wrists.  No muscle weakness or atrophy has been noted
> on examination.

(R. at 23)(internal citations omitted).

Moreover, the ALJ had ample basis for finding Plaintiff to
be less than fully credible.  Plaintiff testified initially that
he had grand mal seizures every three months.  (R. at 197)  When
the ALJ questioned this, noting that the record did not support
it, (id.), Plaintiff claimed that "every three to six months I
used to have big ones," (R. at 198), and that "[t]he last one I
had was November the 12th [2004]," (id.).  Yet, even this claim

was contradicted by the record.  Dr. Donnelly's January 10, 2005, report states that Plaintiff "has had no seizures," (R. at 183) since his visit on August 16, 2004, (id.), and the August 16, 2004, report indicates that Plaintiff had only "brief staring spell type seizures ...," (R. at 181).  Prior reports from Dr. Donnelly indicate that Plaintiff's "last big seizure was in 7/02 in the setting of alcohol use."  (R. at 170)  On July 14, 2003, Dr. Donnelly described Plaintiff as having "a history of posttraumatic epilepsy with occasional generalized tonic clonic seizures," (R. at 171), which were "apparently under good control, provided he does not use too much alcohol," (id.).  Charlene A. Tate, M.D., wrote on January 3, 2002, that Plaintiff "had his first seizure ... in 1993, and then had occasional breakthroughs but he has been seizure free now since April 1998." (R. at 159).  Thus, contrary to Plaintiff's claim that he used to have big seizures every three to six months, the record indicates that his large seizures were separated by four or more years.  In fact, as the ALJ accurately observed, "[t]here is no evidence that the claimant has had a non-alcohol-related, grand mal seizure since 1998."  (R. at 22)

Plaintiff's statements regarding his use of alcohol also provides a further basis to doubt his credibility.  He told James P. Curran, Ph.D., on April 12, 2005, that he had not "had any alcohol since I started on the medication about 12 years ago." (R. at 185)  Yet, Dr. Donnelly's July 14, 2003, report notes that Plaintiff's "last big seizure was in 7/02 in the setting of alcohol use," (R. at 170), and that "[h]e continues to use alcohol intermittently," (id.).  Two months later Dr. Donnelly again noted that Plaintiff's social history was positive for "intermittent alcohol[.]"  (R. at 177)  The ALJ cited this inconsistency as among the reasons that there were questions about Plaintiff's "overall credibility."  (R. at 22)

17

At the hearing, the ALJ asked Plaintiff what had caused him to stop working on June 23, 2003, the day he claimed to have become disabled.  (R. at 196)  Plaintiff responded that he "was having a lot of fatigue seizures ...," (R. at 196), and that he did not want to "fall down or hurt someone else," (id.). Plaintiff denied that he stopped working because the job ended. (R. at 197)  However, Plaintiff apparently told Dr. Donnelly on July 14, 2003, that "[h]e was recently laid off from his job." (R. at 170)  This statement contradicts his hearing testimony that he did not stop working because the job ended.

The Court is also satisfied that the ALJ recognized her duty to consider the Avery factors,[8] see Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986), in evaluating Plaintiff's subjective complaints.  In her decision, the ALJ stated that in making the RFC assessment:

> I must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR § 404.1529 and Social Security Ruling 96-7p.  I must also

---

[8] The Avery factors are:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).

> consider any medical opinions, which are statements from
> acceptable medical sources that reflect judgments about
> the nature and severity of the impairments and resulting
> limitations (20 CFR § 404.1527 and Social Security
> Rulings 96-2p and 96-6p).

(R. at 17)  The <u>Avery</u> factors are contained within 20 C.F.R. §
404.1529 and SSR 96-7p which the ALJ specifically referenced in
her decision.  Although the ALJ in her decision did not address
every item mentioned in each of the <u>Avery</u> factors, Plaintiff was
adequately questioned regarding them by the ALJ and Plaintiff's
attorney at the April 20, 2005, hearing, <u>see</u> <u>Frustaglia v. Sec'y
of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987).  The
ALJ inquired of Plaintiff as to why he left his job, how often he
had staring spells, and what the spells were like.  (R. at 196-
97, 218-19)  The ALJ also discussed Plaintiff's headaches at the
hearing.  (R. at 200-01)  The ALJ questioned Plaintiff about his
medication: increases, decreases, dosages, when they were taken,
and any side effects.  (R. at 199-200, 214-16, 217)  The ALJ also
asked Plaintiff to describe his functional restrictions.  (R. at
217-18)  Finally, Plaintiff testified in great detail about his
daily activities and recreational activities/hobbies.  (R. at
201-09, 213)  Moreover, Plaintiff was thoroughly questioned by
his attorney about his fatigue and other side effects of his
medication and how those side effects would restrict Plaintiff's
ability to work.  (R. at 220-25)

    Overall, the ALJ's decision reflects considerable effort on
her part to review all of the relevant evidence and reach a
reasoned result based on that evidence.  The Court declines to
remand this matter for the mere purpose of dotting every "i" and
crossing every "t."  <u>Cf.</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057
(7th Cir. 1989)(noting that, although an ALJ's opinion may be
vulnerable, "[n]o principle of administrative law or common sense
requires [a court] to remand a case in quest of the perfect

opinion unless there is reason to believe that remand might lead to a different result."). The ALJ was not required to accept Plaintiff's claims regarding the degree of limitation resulting from his fatigue.

Thus, the Court concludes that the ALJ's consideration of Plaintiff's subjective statements was adequate and that her determination that Plaintiff's allegations concerning his limitations were not totally credible is based on substantial evidence. Plaintiff's second claim of error is, therefore, rejected.

### Summary

Plaintiff waived the claim that his epilepsy meets or equals the requirements of Listing 11.03 by not raising this issue before the ALJ. Even if his waiver is overlooked, substantial evidence in the record supports the ALJ's determination that Plaintiff's seizures do not meet or equal Listing 11.03. In addition, the ALJ was not required to use a medical advisor, and her failure to do so does not constitute legal error. Lastly, the ALJ's assessment of Plaintiff's credibility complied with the applicable rules and regulations, and her determination that Plaintiff was not entirely credible is supported by substantial evidence.

### Conclusion

For the reasons stated above, the Court finds that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and that any legal error is harmless. Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Remand be denied.

So ordered.

ENTER:


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 11, 2007